# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### CHARLOTTESVILLE DIVISION

| | |
|---|---|
| EREINA LOUISE KINDRED, | CIVIL ACTION No. 3:08CV00019 |
| *Plaintiff,* | |
| v. | **MEMORANDUM OPINION** |
| NICHOLAS MCLEOD, ET AL., | |
| *Defendants.* | JUDGE NORMAN K. MOON |

This matter is before the Court on a motion (docket no. 46) for default judgment filed by Plaintiff, Ereina Louise Kindred. The Clerk of the Court has entered default against Defendants Nicholas McLeod, United Consultant Firm, LLC, Philip J. George, and Certified Title and Escrow, Inc., and Plaintiff now asks the Court for entry of default judgment and assessment of damages against these Defendants, jointly and severally. For the reasons stated below, Plaintiff's motion for default judgment will be granted. Judgment will be entered in Plaintiff's favor in the amount of $83,700.00 ($27,900.00 in actual damages, trebled pursuant to the Virginia Consumer Protection Act); additionally, Plaintiff will be awarded $350.00 in costs and $52,515.00 in attorneys' fees.

## I. BACKGROUND[1]

This action arises out of Defendants' foreclosure rescue scam of the sale-leaseback variety, through which Defendants defrauded Plaintiff of a substantial amount of money and her primary residence. Defendants induced Plaintiff to participate in United Consultant Firm, LLC's "Debt Free Program," which purported to help alleviate her debt, but actually was used by Defendants to

---

[1] On a motion for default, the plaintiff's factual allegations are accepted as true, excluding the determination of damages. *See* Fed. R. Civ. P. 8(b)(6); *see also Ryan v. Homecomings Fin. Network,* 253 F.3d 778, 780 (4th Cir. 2001) (citations omitted). Plaintiff's motion is submitted with exhibits in support of her factual allegations.

transfer title of Plaintiff's property and then to force Plaintiff to make rental payments to remain in her home. Plaintiff filed this suit, alleging violations of the Racketeer Influenced and Corrupt Organizations Act, the Credit Repair Organizations Act, the Virginia Consumer Protection Act, and the Credit Services Business Act. Plaintiff also alleged Virginia common law claims of "fraud, intentional misrepresentation, and deceit"; conspiracy; breach of fiduciary duty; conversion; and unjust enrichment.

Nicholas McLeod represented that his "Debt Free Program," which he operated through his company, United Consultant Firm, LLC, helped customers avoid foreclosure, bankruptcy, bad credit issues, and insurmountable debt. United Consultant's website stated, *inter alia*, that it had "helped many families to save their homes days before foreclosure auctions." The "Debt Free Program" form signed by Plaintiff stated that the transaction was a loan that would result in an equitable mortgage, allowing Plaintiff to pay off her outstanding debts, improve her credit, and retain her home. To complete the transaction, an "investor" would be represented on the title for 12 months, after which time said "investor" would be removed from the title, and Plaintiff would be left with the remaining mortgage and the option to refinance the property. However, in addition to the "Debt Free Program" form, McLeod also instructed Plaintiff to sign a "Residential Contract of Sale," including a deed granting the "investor" fee simple title to the property in return for consideration of $137,000.00. Plaintiff signed the "Residential Contract of Sale" and the deed. Philip J. George, and Certified Title and Escrow, Inc., were the escrow agents appointed for the transaction. Plaintiff was unaware of the significance of the documents she signed, was not represented by counsel, and was not given copies of the documents, even after requesting them from McLeod at the time of signing, and requesting them again a month later from George and Certified Title and Escrow.

After the initial 12 months elapsed, the "investor," a Ms. Detra Mosby-Moorman,[2] was not removed from the title, and Plaintiff was not given the option to refinance, even though she had been guaranteed that option by the "Debt Free Program." Instead, Ms. Mosby-Moorman sued Plaintiff for eviction, claiming that Plaintiff was behind on rental payments, and was obliged to make rental payments of $1,300 per month (significantly higher than the average rental rate for a comparable property) if she wanted to remain on the premises. Plaintiff paid this inflated rate because she believed it was the only way to retain her right to regain full title to her property.

Subsequently, on August 19, 2007, McLeod pleaded guilty to charges related to an equity-skimming scam for taking equity from homeowners in Virginia and Maryland through transactions similar to the transactions at issue in this action. On January 10, 2008, McLeod was sentenced to six years in Maryland state prison after pleading guilty to felony theft and embezzlement.

Defendant McLeod of Defendant United Consultant Firm, LLC, and Defendant George of Defendant Certified Title and Escrow, Inc., were actively involved in the transactions associated with Plaintiff's property and profited from the scam, causing Plaintiff to lose all equity in, and title to, her home. Although Plaintiff has since recovered title to her home, she has still suffered uncompensated monetary and emotional harm as a result of this transaction. As previously noted, the instant motion for judgment is submitted with exhibits in support of Plaintiff's factual allegations. The exhibits include Plaintiff's Declaration, attached to the instant motion as Exhibit A, which details values of the contracts and mortgages involved in the transactions associated with Plaintiff's property, and the amounts that she was paid and has been compensated for through cash,

---

[2] On July 31, 2009, Plaintiff voluntarily dismissed Mosby-Moorman as a defendant in this action.

debt relief, and other consideration. This affidavit provides the factual basis for calculating the requested damages.

On July 22, 2008, the summons, complaint, and amended complaint in this matter were served on Nicholas McLeod personally, and also on United Consultant Firm, LLC, by serving their owner, managing member, and resident agent, Nicholas McLeod. On August 4, 2008, Philip J. George was served at his place of residence by substituted service on his wife. On August 4, 2008, Certified Title and Escrow, Inc., was served by service on its registered agent, Philip J. George, at his residence by substituted service on his wife. Certified Title and Escrow, Inc. was also served on August 4, 2008, through its statutory agent, the Clerk of the State Corporation Commission, pursuant to Federal Rules of Civil Procedure 4(h)(1)(a) and 4(e)(1) and Virginia Code §§ 12.1-19.1, 13.1-637(B).

On August 6, 2010, Plaintiff moved for entry of default against Defendants Nicholas McLeod, United Consultant Firm, LLC, Philip J. George, and Certified Title and Escrow, Inc. On September 15, 2010, the Clerk of the Court entered default against Defendants. On September 28, 2010, Plaintiff filed the instant motion for default judgment. On November 4, 2010, Nicholas McLeod filed an answer to the amended complaint. McLeod did not request any extension of time to file his answer, which was due on August 11, 2008. McLeod's answer does not acknowledge its untimeliness or seek any relief from the entry of default, and it does not answer on behalf of United Consulating Firm, LLC. As of today, United Consultant Firm, LLC, Philip J. George, and Certified Title and Escrow, Inc. have not responded to this litigation in any way.

## II. DISCUSSION

### A. Default Judgment

"Rule 55 of the Federal Rules of Civil Procedure authorizes the entry of a default judgment

when a defendant fails 'to plead or otherwise defend' in accordance with the Rules." *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982). The clerk of court's interlocutory "entry of default" pursuant to Federal Rule of Civil Procedure 55(a) provides notice to the defaulting party prior to the entry of default judgment by the court. *Carbon Fuel Co. v. USX Corp.*, 153 F.3d 719 (Table), 1998 WL 480809 (4th Cir. Aug. 6, 1998). After the entry of default, the non-defaulting party may move the court for "default judgment" under Federal Rule of Civil Procedure 55(b). *Id*. Under Rule 55(b)(1), "[i]f the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk – on the plaintiff's request, with an affidavit showing the amount due – must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person." Fed. R. Civ. P. 55(b)(1). "In circumstances where the sum is not certain or where there is evidence to suggest that the defendant was incompetent or an infant, Rule 55(b)(2) applies, requiring that default can only be made by a court." *Agri-Supply Co. v. Agrisupply.com*, 457 F. Supp. 2d 660, 662 (E.D. Va. 2006).

As I have already noted, upon default the plaintiff's factual allegations are accepted as true for all purposes, excluding the determination of damages. *See Ryan v. Homecomings Fin. Network,* 253 F.3d 778, 780 (4th Cir. 2001) (citations omitted); *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied."). Although the clear policy of the Federal Rules of Civil Procedure is to encourage dispositions of claims on their merits, the entry of default judgment is committed to the discretion of the trial court. *See Moradi*, 673 F.2d at 727 (citing *Reizakis v. Loy*, 490 F.2d 1132, 1135 (4th Cir. 1974)). In reviewing motions for default judgment, courts have referred to the following factors:

(1) whether there is a large amount of money involved in the litigation; (2) whether

there are material issues of fact in the case needing resolution; (3) whether the case involves issues of great public importance; (4) whether the grounds for the motion for a default judgment are highly technical; (5) whether the party asking for a default judgment has been prejudiced by the non-moving party's actions or omissions; (6) whether the actions or omissions giving rise to the motion for a default judgment are the result of a good-faith mistake on the part of the non-moving party; (7) whether the actions or omissions giving rise to the motion for a default judgment are the result of excusable neglect on the part of the non-moving party; and (8) whether the grounds offered for the entry of a default judgment are clearly established.

*Faulknier v. Heritage Financial Corp.*, 1991 U.S. Dist. LEXIS 15748 (W.D. Va. May 20, 1991)

(citing 10 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure §§ 2684-85 (1990)).

As indicated above, Defendants have completely failed to participate in this litigation in any meaningful way. Defendants United Consultant Firm, LLC, Philip J. George, and Certified Title and Escrow, Inc. remain completely unresponsive and McLeod, who remained unresponsive to the suit until November 4, 2010 (long after he had been served, default had been entered, and Plaintiff had moved for default judgment), does not offer in his belated answer any grounds to set aside the entry of default.[3] Although the amount of money involved in this litigation is not insubstantial, it is not so large as to be remarkable. The grounds for this motion are not highly technical, and although losses incurred by equity-skimming scams are undoubtedly matters of some importance to the public, the instant matter, although of great importance to Plaintiff, does not present issues of "great public importance." The grounds offered by Plaintiff for the entry of default judgment are clearly established, and Defendants' failure to defend this action does not appear to be the result of excusable neglect or any good-faith mistake. Furthermore, Plaintiff has been significantly

---

[3] Federal Rule of Civil Procedure 55 (c), "**Setting Aside a Default or a Default Judgment**," provides that "[t]he court may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b)." McLeod's much-belated answer does not acknowledge its untimeliness, does not state any cause -- much less good cause -- for setting aside the entry of default, and does not state any of the reasons for relief enumerated in Rule 60(b).

prejudiced by Defendants' alleged actions. There is no dispute that Defendants were actively involved in the transactions associated with Plaintiff's property and profited from the scam, causing the Plaintiff to lose all equity in, and title to, her home. There is likewise no dispute that Defendants breached the "Debt Free Relief" contract with the Plaintiff and are liable for the amounts to be proven by the Plaintiff. Additionally, Plaintiff has expended significant time and energy working with her attorney to right the alleged wrongs committed by Defendants.

Given all of these factors and Defendants' blatant disregard of Plaintiff's claims and this Court's commands to respond to the complaint, default judgment in Plaintiff's favor is warranted. Pursuant to the following determination of damages to which Plaintiff is entitled for Defendants' violations of law, the Court will enter default judgment against Defendants, jointly and severally.

### B. Damages

As stated above, Plaintiff seeks an award of $83,700.00 (actual damages of $27,900.00, trebled pursuant to the Racketeer Influenced and Corrupt Organizations Act or the Virginia Consumer Protection Act), plus $350 in costs and $52,515.00 in attorneys' fees. While Plaintiff's factual averments must be taken as true, her assessment of the damages need not be. *See Ryan,* 253 F.3d at 780; Fed. R. Civ. P. 8(b)(6). However, a district court entering a default judgment may award damages ascertainable from the pleadings without holding a hearing. *See Anderson v. Foundation for Advancement, Education and Employment of American Indians*, 155 F.3d 500, 507 (4th Cir. 1995) (remanding for hearing on damages because complaint failed to state a claim for civil RICO and the district court erred to the extent it entered default judgment on that basis); *Mutual Federal Sav. and Loan Ass'n v. Richards & Associates, Inc.*, 872 F.2d 88, 91 (4th Cir. 1989) (over $8 million in damages awarded without a hearing). As explained herein, the damages in this action are ascertainable from the pleadings.

### 1. **Actual Damages**

The exhibits submitted in support of the instant motion, including Plaintiff's declaration, detail the values of the contracts and mortgages involved in the transactions associated with Plaintiff's property, and the amounts that she was paid and has been compensated for through cash, debt relief, and other consideration. Based on my review of Plaintiff's affidavit, which provides the factual basis for calculating damages, and the rest of the record in this case, which supports Plaintiff's declaration, I determine that Plaintiff suffered actual damages of $27,900.00, an amount of damages for which Plaintiff was not compensated through debt relief, cash, or other means.[4] As explained herein, these actual damages are available to Plaintiff under a number of statutory and common law schemes.

#### a. *Credit Repair Organizations Act*

The Credit Repair Organizations Act ("CROA") prohibits credit repair organizations from making untrue or misleading representations to individuals regarding their services, and from engaging in transactions that result in the commission of a fraud on an individual in connection with the offer and sale of credit repair services. 15 U.S.C. § 1679b(a).[5] Additionally, the CROA requires

---

[4] Originally, Plaintiff took out a mortgage from Orion Financial in 2002 for $79,000.00, and another mortgage from Citi Financial in 2003 for $12,831.08. The events involving the instant Defendants arose in 2005, when Plaintiff sought "to refinance the loans in order to access additional equity from [her] home to pay off bills and improve [her] credit." Plaintiff avers that she "received cash and debt relief as follows: $11,500 in cash wired from Certified Title and Escrow, Inc. to [her] BB&T account on April 19, 2005, and satisfaction of mortgages from Orion Financial Group and Citi Financial with balances of approximately $78,000.00 and $12,500.00, respectively." She adds that she "received an additional $120 in payments toward certain debts, and 12 months without mortgage payments under the Debt Free Program," and that, "[o]f the $137,000 allegedly paid by Mosby-Moorman according to the Deed, [Plaintiff] only received approximately $109,100 of cash, debt relief[,] and additional consideration," which results in a difference reflecting a loss of $27,900.00 in equity skimmed by Defendants.

[5] It is apparent that an individual person, such as McLeod, can be liable under the CROA, which defines "credit repair organization" as:

(continued...)

-8-

credit repair organizations to provide customers with a written disclosure statement describing the customer's rights before entering into a contract for the provision of credit repair services. 15 U.S.C. §1679c(a). Within 3 business days after a contract is signed, the organization must provide the customer with a written contract including the terms and conditions of payment, the total amount of all payments to be made by the customer, a full description of the services to be performed, and a conspicuous statement regarding the customer's right to cancel the contract. 15 U.S.C. § 1679d. Individuals injured by a violation of the CROA may be awarded actual damages of the greater of any actual damages sustained because of the organization's CROA violation, or any amount paid by the individual to the credit repair organization. 15 U.S.C. §1679g(a)(1). Plaintiff's factual assertions, summarized above, establish that Defendants are liable for having violated the provisions of the CROA cited herein.[6] Plaintiff

---

[5](...continued)

> *any person* who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform (or represents that such person can sell, provide, or perform) any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of-(i) improving any consumer's credit record, credit history, or credit rating; or (ii) providing any advice or assistance to any consumer with regard to any activity or service described in clause (i)....

15 U.S.C. § 1679a(3)(A) (emphasis added). Furthermore, the CROA states that:

> [n]o *person* may engage, directly or indirectly, in any act, practice, or course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization.

10 15 U.S.C. § 1679b(a)(4) (emphasis added). Thus, the scope of the CROA encompasses more than merely credit repair organizations. The plain language of the statute dictates the finding that the CROA applies to a person's indirect fraudulent actions taken in connection with the offer of credit repair services, and is not limited to an entity that actually provides credit repair services.

[6] Assuming *arguendo* that Rule 9(b) of the Federal Rules of Civil Procedure requires that the allegations of misrepresentations under 15 U.S.C. § 1679b(a) be pleaded with particularity, I am satisfied that Plaintiff pleaded all of her claims regarding Defendants' fraudulent actions with sufficient particularity. *See* Fed. R. Civ. P. 9(b); *see also Lasercomb Am., Inc. v. Reynolds*, 911 F.2d 970, 980 (4th Cir. 1990) (the complaint must "specifically allege the time, place and nature of the fraud."); *Cars Unlimited II, Inc. v. National Motor Co., Inc.*, 472 F. Supp.

(continued...)

suffered actual damages of $27,900.00, and under the CROA, Plaintiff is entitled to this amount in actual damages.[7]

### b. *Virginia Credit Services Business Act*

The Virginia Credit Services Business Act ("CSBA"), the state counterpart to the CROA, prohibits credit services businesses from making misleading representations to prospective customers and from charging or receiving money prior to full performance of the services offered, and requires such businesses to provide information statements to customers describing services, fees, and the customer's right to cancellation. Va. Code § 59.1-335.5-8. Individuals injured by a violation of the CSBA may be awarded actual damages of the greater of any actual damages sustained because of the credit service business's CSBA violation, or any amount paid by the individual to the credit service business. Va. Code § 59.1-335.10. As detailed in Plaintiff's factual assertions and summarized above, Defendants are susceptible to liability pursuant to the Virginia CSBA,[8] and Plaintiff is entitled under the Virginia CSBA to actual damages of $27,900.00.

---

[6](...continued)
2d 740, 744 (E.D. Va. 2007) (quoting 5 Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure: Civil § 1297, at 590 (2d ed.1990)) (fraud pleadings should include "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby."); *Mortarino v. Consultant Eng'g Servs., Inc.*, 251 Va. 289, 295 (1996) (citations omitted) (under Virginia law, "'[w]here fraud is relied on, the [pleading] must show specifically in what the fraud consists, so that the defendant may have the opportunity of shaping his defence [*sic*] accordingly, and since [fraud] must be clearly proved it must be distinctly stated.'"); *Norris v. Mitchell*, 255 Va. 235, 240-41 (1998) (Virginia law permits fraud claims based upon a concealment to proceed upon "either an allegation or evidence of a knowing and a deliberate decision not to disclose a material fact.").

[7] Plaintiff asserts several times that, although she is entitled to punitive damages for Defendants' conduct, she "is not seeking punitive damages in the motion for default judgment."

[8] The Virginia CSBA defines a "credit services business" as follows:

> any person who, with respect to the extension of credit by others, sells, provides, or performs, or represents that such person can or will sell, provide, or perform, any of the following services in return for the payment of money or other valuable consideration:

(continued...)

### c.      Fraud

Plaintiff alleged "fraud, intentional misrepresentation, and deceit" against Defendants.[9] Virginia common law prohibits individuals from engaging in fraud, intentional misrepresentation, or deceit to the detriment of others, and individuals injured by violations of these common law doctrines are entitled to awards for actual damages sustained. *See Ware v. Scott*, 220 Va. 317, 319-21 (1970) (seller who fraudulently concealed material information from buyer was liable for actual damages to the buyer); *F.D.I.C. v. Bakkebo*, 506 F.3d 286, 297-8 (4th Cir. 2007) (defendant was liable for damages arising from fraudulent misrepresentations he made to a bank that was taken over by the plaintiff). To establish a common law fraud claim under Virginia law, a plaintiff must establish that the defendant made "'a false representation of a material fact, was made intentionally and knowingly, with intent to mislead,'" *Sales v. Kecoughtan Housing Co., Ltd.*, 279 Va. 475, 481 (2010) (quoting *Elliott v. Shore Stop, Inc.*, 238 Va. 237, 244 (1989)), and that the plaintiff reasonably relied on the false representation and thereby suffered damage, *id.*

To be sure, "losses suffered as a result of the breach of a duty assumed only by agreement, rather than a duty imposed by law, remain the sole province of the law of contract." *Filak v.*

_____

[8](...continued)

      1. Improving a consumer's credit record, history, or rating;

      2. Obtaining an extension of credit for a consumer; or

      3. Providing advice or assistance to a consumer with regard to either subdivision 1 or 2 herein.

Va. Code § 59.1-335.2. The definition is substantially similar to the definition of "credit repair organization" under the CROA.

[9] Th count in the amended complaint styled as "fraud, intentional misrepresentation, and deceit" "sets forth a claim for damages by Plaintiff against Defendants McLeod, United Consultant Firm, LLC, [William] Moore, Sr., Moore Financial Group Corporation, [Detra] Mosby- Moorman, [Phillip J.] George, and Certified Title and Escrow, Inc. for common law fraud." William Moore, Sr. and Moore Financial Group are not subject to the instant motion, and as previously noted, Plaintiff has voluntarily dismissed Detra Mosby-Moorman as a defendant in this case.

*George*, 267 Va. 612, 618 (2004). This principle, "the economic loss rule," the purpose of which is to preserve the contract-tort distinction in the common law, prohibits the recovery of "'purely economic losses' in a tort action simply by recasting a contract claim as a tort claim." *Waytec Elec. Corp. v. Rohm and Haas Elec. Materials, LLC*, 459 F. Supp. 2d 480, 491 (W.D. Va. 2006) (citing *Sensenbrenner v. Rust, Orling & Neale Architects, Inc.*, 236 Va. 419, 423 (1988)). "Tort law is not designed . . . to compensate parties for losses suffered as a result of a breach of duties assumed only by agreement." *Sensenbrenner*, 236 Va. at 425.

In order to determine whether a claim is subject to the restrictions imposed by the economic loss rule, a court must first determine the nature and source of the duty allegedly violated. *Richmond Metropolitan Authority v. McDevitt Street Bovis, Inc.*, 256 Va. 553, 558 (1998). If the duty does not exist absent an agreement establishing that duty, then it is a duty based in contract; if the duty arises from the relationship of the parties irrespective of any agreement, then any action for breach of that duty sounds in tort. *Oleyar v. Kerr*, 217 Va. 88, 89-90 (1976). "Thus, if, when the surface is scratched, it appears that the defendant has breached a duty imposed by law, not by contract, the economic loss rule should not apply." *City of Richmond v. Madison Mgmt. Group, Inc.*, 918 F.2d 438, 446 (4th Cir. 1990).

Here, however, the allegations amount to fraud in the inducement, which although related to contract, still sounds in tort. "The general rule is that fraud must relate to a present or pre-existing fact, and cannot ordinarily be predicated on unfulfilled promises or statements of future events." *Soble v. Herman*, 175 Va. 489, 500 (1940). Virginia law, however, "'distinguishes between a statement that is false when made and a promise that becomes false only when the promisor later fails to keep his word. The former is fraud, the latter is breach of contract.'" *Madison Mgmt. Group*, 918 F.2d at 447 (quoting *Lissmann v. Hartford Fire Ins. Co.*, 848 F.2d 50, 53 (4th Cir. 1988)). The

"critical inquiry . . . is whether the defendant's statement . . . was false when made." *Lissman*, 848 F.2d at 53. Indeed, when a party "makes a promise, intending not to perform, his promise is a misrepresentation of *present* fact, and if made to induce the promisee to act to his detriment, is actionable as an actual fraud." *Colonial Ford Truck Sales, Inc. v. Schneider*, 228 Va. 671, 677 (1985).

Plaintiff's fraud claim falls within the fraud exception to the economic loss rule. Plaintiff alleges that she entered into the "Debt Free Program" in reliance upon Defendants' misrepresentations. She alleged that Defendants made misrepresentations to her "intentionally" and "knowingly," and "willfully," that the misrepresentations were "willful and material," and that, *inter alia*, "it was never . . . Defendants' intention to allow Plaintiff to refinance the property." Plaintiff added that "Defendants' misrepresentations prevented Plaintiff from discovering the injury until May of 2006 when she was served with eviction papers." In sum, Plaintiff pleaded that the alleged fraud occurred in order to induce her to enter into the contract and to prevent her from knowing of the results of Defendants' actions; as such, Plaintiff has pleaded an actual fraud claim that is not barred by the economic loss rule. As previously noted, Plaintiff has pleaded her fraud claim with sufficient particularity[10] and, as detailed in Plaintiff's factual assertions and summarized above, Plaintiff is entitled to $27,900.00 in actual damages.

### d.    Conspiracy

Virginia common law prohibits two or more parties from working together to accomplish

---

[10] *See* n. 6, *supra*. I stress that common law fraud in Virginia sets "[t]he burden . . . upon the one alleging it, and if it is not strictly and clearly proven as alleged, by circumstantial or direct evidence, no relief will be granted." *Martin v. Williams*, 194 Va. 437, 445-46 (1952). "To sustain a claim of actual fraud, the plaintiff must prove a false representation, of a material fact, made intentionally and knowingly, with intent to mislead, reliance by the party misled, and resulting damage." *ITT Hartford Group v. Virginia Fin. Assocs., Inc.*, 258 Va. 193, 203 (1999). Plaintiff has met this burden.

an unlawful purpose or to accomplish a lawful purpose by unlawful means, resulting in damage to another individual. *Firestone v. Wiley*, 485 F. Supp. 2d 694, 703 (E.D. Va. 2007) (citing *Glass v. Glass*, 228 Va. 39, 47 (1984)). The damage caused by the acts committed in furtherance of the conspiracy is the foundation of a civil claim of conspiracy, *Commercial Bus. Sys., Inc. v. BellSouth Servs., Inc.*, 249 Va. 39, 48 (1995), and individuals injured by the actions of such conspiracies are entitled to awards for the actual damages sustained, given that actual damages are a required element of such claims, *Chisolm v. TranSouth Financial Corp.*, 194 F.R.D. 538, 549 (E.D. Va. 2000). The record before me is sufficient to support Plaintiff's allegations that Defendants acted in concert to defraud Plaintiff of the equity in her home, to transfer title of Plaintiff's home, and then force her to pay unreasonable rent to remain in the home or face eviction and loss of the property altogether. As detailed in Plaintiff's factual assertions and summarized above, Plaintiff's conspiracy claim supports an award of $27,900.00 in actual damages.

### e.   *Fiduciary Duty*

Virginia common law prohibits a principal's violation of its fiduciary duty to an individual, and the performance of tortious acts against that individual. *See Williams v. Dominion Technology Partners, L.L.C.*, 265 Va. 280, 289-92 (2003) (compensatory damages were awarded to the plaintiff as a result of the defendants' breaches of fiduciary duties owed to the plaintiff). Principals may not make false statements of material facts to a fiduciary, self-deal by fraudulently transferring the fiduciary's property to themselves or their affiliates, or intentionally, maliciously, fraudulently, and with a conscious disregard for the rights and likelihood of injury to the fiduciary, act to further their own economic interest at the expense of the fiduciary. *Id*. Fiduciaries injured through their principle's violations of fiduciary duties are entitled to awards for actual damages sustained. *Id*.

It is clear to me that Defendants owed Plaintiff a common law fiduciary duty. As the

Supreme Court of Virginia explained in *H-B Ltd. P'ship v. Wimmer*, "[a] fiduciary relationship exists in all cases when special confidence has been reposed in one who in equity and good conscience is bound to act in good faith and with due regard for the interests of the one reposing the confidence." 220 Va. 176, 179 (1979) (finding real estate broker, charged with negotiating purchase of property, breached fiduciary duty where he purchased property for himself) (citing *Horne v. Holley*, 167 Va. 234, 241 (1936)). Here, Defendants acted to further their own economic interest at Plaintiff's expense when they skimmed Plaintiff's equity upon empty promises of rehabilitated credit and an opportunity to refinance the property; Defendants' empty promises resulted in the ownership of Plaintiff's property being transferred and Plaintiff being forced to pay rent. As detailed in Plaintiff's factual assertions and summarized above, Plaintiff's fiduciary duty claim supports an award of $27,900.00 in actual damages.

### f.    Conversion

Virginia law defines conversion as any distinct act of dominion or control wrongfully exerted over the property of another, either inconsistent with, or in denial of, the owner's rights. *See Fed. Ins. Co. v. Smith*, 63 Fed. App'x 630, 632 (4th Cir. 2003); *see also Hairston Motor Co. v. Newsome*, 253 Va. 129, 135 (1997). A plaintiff seeking recovery on a claim of conversion must prove that the defendant converted it by "any" wrongful exercise of dominion or control that deprived the plaintiff of his rightful possession. *See, e.g., Universal C.I.T. Credit Corp. v. Kaplan*, 198 Va. 67, 75-76 (1956), citing 19 *Michie's Jurisprudence*, Trover and Conversion, § 4 at 27.

The equity in Plaintiff's home was converted to cash by the mortgages on the home's title taken out by Defendant Mosby-Moorman. *See Fed. Ins. Co.*, 63 Fed. App'x at 635 (plaintiff "had a right to the funds at the moment of embezzlement," defendant had "fraudulently obtained [the] checks" and "never had a right to the checks or the funds they represented," and plaintiff "remained

-15-

the rightful owner of those funds"; thus, plaintiff's claim was "not to an undocumented intangible property right, but to a clearly established property right"); *see also PGI, Inc. v. Rathe Prods., Inc.*, 265 Va. 334, 344 (2003) (any wrongful exercise of dominion or control over another's goods, including sums of money, in denial of the lawful owner's rights states a claim for conversion). Subsequently, the Defendants who are the subject of the instant motion intentionally converted to their use the cash value of Plaintiff's remaining equity in her home totaling approximately $27,900 -- without her consent, permission, justification, or adequate consideration, thus constituting an unlawful conversion. As detailed in Plaintiff's factual assertions and summarized above, Plaintiff's conversion claim supports an award of $27,900.00 in actual damages.

### g.    *Unjust Enrichment*

Virginia common law prohibits unjust enrichment resulting from a benefit conferred by the plaintiff on the defendant with knowledge by the defendant that the benefit was conferred, and which the defendant retained inequitably without paying for its value. *See In re Cherokee Corp. of Linden, Va., Inc.*, 222 B.R. 281, 287 (Bkrtcy. E.D. Va. 1998); *see also Guinee v. Heydt (In re Wilson)*, 90 B.R. 208 (Bkrtcy. E.D. Va. 1988), *Robertson v. Robertson*, 137 Va. 378 (1923). Here, Defendants were unjustly enriched at Plaintiff's expense when Defendants knowingly accepted the fraudulent benefit of the aforesaid cash value of the equity in Plaintiff's home. Accordingly, Plaintiff is entitled to actual damages in the amount of $27,900 as a result of Defendants' unjust enrichment at her expense.

### 2.    **Treble Damages**

Plaintiff's motion for default judgment asserts that two separate statutory schemes, the Racketeer Influenced and Corrupt Organizations Act ("RICO") and the Virginia Consumer Protection Act ("VCPA"), provide for trebling of her damages.

### a.  RICO

The first count of Plaintiff's amended complaint asserts violations of RICO.[11]  Plaintiff alleged that "[t]he Defendants named in this Count acted in concert against Plaintiff to unlawfully defraud and deprive her of her home and equity under the false pretence of providing her with a refinanced loan secured by her home," and that McLeod, "personally and through his company Defendant United Consultant Firm, LLC, led an enterprise designed to strip desperate owners of their title and equity. . . ."  Plaintiff points out that McLeod "has pled guilty in Maryland to a pattern of equity stripping scams committed after the enactment of RICO and within 10 years of his offenses against Plaintiff."  Plaintiff adds that

> Defendants McLeod and United Consultant Firm, LLC transmitted or caused to be transmitted the Residential Contract of Sale and the Debt Free Program contract between Defendant Mosby-Moorman and Plaintiff by fax from Maryland to Defendants Moore, Sr. and Moore Financial Group Corporation in Virginia on or about February 10, 2005, which Defendants Moore, Sr. and Moore Financial Group then forwarded to Plaintiff by fax in furtherance of the scheme to defraud Plaintiff of her home and equity, in violation of 18 U.S.C. § 1343.[12]

According to Plaintiff, "[i]n furtherance of the scheme to defraud Plaintiff, Defendants George and Certified Title and Escrow, Inc. utilized wire transfer technology in order to send and receive cash from the escrow account related to the closing of the fraudulent transaction involving Plaintiff's house," and "[t]hrough the documents sent to her by Defendants via fax," she "justifiably relied

---

[11] Th RICO count in the amended complaint "sets forth a claim for damages by the Plaintiff against Defendants McLeod, United Consultant Firm, LLC, [William] Moore, Sr., Moore Financial Group Corporation, [Detra] Mosby- Moorman, [Phillip J.] George, and Certified Title and Escrow, Inc. for violations of" RICO.  As previously noted, William Moore, Sr. and Moore Financial Group are not subject to the instant motion, and Plaintiff has voluntarily dismissed Detra Mosby-Moorman as a defendant in this case.

[12] Title 18, section 1343 applies to fraud by wire, radio, or television.  In short, to commit wire fraud, one must (1) devise, or intend to devise, a scheme or artifice to defraud another person on the basis of a material representation, and (2) do it with the intent to defraud, and (3) do it through the use of interstate wire facilities, *i.e.* telecommunications of any kind).

upon representations made by" Defendants McLeod and United Consultant Firm, LLC "about the transaction's nature as that of a loan rather than a sale."

Plaintiff states that she "was damaged by her reliance on the representations made by the Defendants named in this Count that she would be allowed to refinance her home and would retain ownership of her home" and that the fraudulent transaction involving her home was "one of at least nine other similar transactions in a scheme led by Defendants McLeod and United Consultant Firm, LLC involving theft of equity and title from homeowners utilizing the same or similar tactics used to defraud Plaintiff in the transaction that is the subject matter of this suit." Plaintiff claims that, as a result of Defendants' violations of RICO, she "has suffered substantial damages and is entitled to an award against the Defendants named in this Count, jointly and severally, of treble damages plus costs and attorneys' fees, as set forth in RICO, 19 U.S.C. § 1964(c)."

RICO prohibits individuals from using income derived through a pattern of racketeering activity to invest in, acquire, or establish any establishment or enterprise whose activities affect interstate or foreign commerce. 18 U.S.C. § 1962. Individuals injured by a violation of RICO are granted remedies in the form of treble damages. 18 U.S.C. § 1964(c). To a state a civil clam for a RICO violation, a plaintiff must allege: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985) (footnote omitted). In this case, although Plaintiff alleges that McLeod "has pled guilty in Maryland to a pattern of equity stripping scams committed after the enactment of RICO and within 10 years of his offenses against Plaintiff," that Defendants "utilized wire transfer technology in order to send and receive cash from the escrow account related to the closing of the fraudulent transaction involving Plaintiff's house," and that Defendants sent documents to her via fax, I find that she does not make sufficient allegations to support the element of a "pattern" of activity. *See, e.g., ePlus Tech., Inc.*

*v. Aboud*, 313 F.3d 166, 181-82 (4th Cir.2002) (explaining that, to establish a "pattern" of racketeering activity, a plaintiff must show that the "predicate acts of racketeering activity" were "part of a prolonged criminal endeavor"); *see also Williams v. Equity Holding Corp.*, 498 F. Supp. 2d 831, 843 (E.D. Va. 2007) (dismissing a civil RICO claim where plaintiffs failed to allege a RICO pattern with the specificity required under Rule (b) of the Federal Rules of Civil Procedure).

RICO attempts to address situations of long-term criminal conduct, *HJ. Inc. v. Northwestern Bell Telephone Co., Inc.*, 492 U.S. 229, 242 (1989), and the United States Court of Appeals for the Fourth Circuit advises a "caution," which is "designed to preserve a distinction between ordinary or garden-variety fraud claims better prosecuted under state law and cases involving a more serious scope of activity," *Al- Abood ex rel. Al-Abood v. El-Shamari*, 217 F.3d 225, 238 (4th Cir. 2000). Here, considering all of the facts in the light most favorable to Plaintiff, this case "does not fall 'sufficiently outside the heartland of fraud cases to warrant RICO treatment.'" *GE Investment Private Placement Partners II v. Parker*, 247 F.3d 543, 551 (4th Cir. 2001) (citing *Al- Abood*, 217 F.3d at 238). As for Plaintiff's fraud claims, full relief is available to Plaintiff under state law, including a treble damages scheme, discussed below. Accordingly, Plaintiff's request for a default judgment as to her RICO claims against the named defendants is denied, and her damages will not be trebled pursuant to 18 U.S.C. § 1964(c).

### b. VCPA

The VCPA prohibits the use of deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction, including a misrepresentation of the nature of the agreement itself. Va. Code § 59.1-200(A)(14). Individuals injured by a violation of the VCPA may be, among other remedies, entitled to an award of treble damages. Va. Code § 59.1-204 (A). The VCPA provides that, where the violation is willful, the Court "may increase

damages to an amount not exceeding three times the actual damages sustained, or $1,000, whichever is greater." *Id.* Accordingly, I must determine whether Defendants' violation of the VCPA was willful. "Willful violations are those that involve knowing and intentional disregard of the protections afforded consumers." *Synergistic Intern., LLC v. Korman*, 402 F. Supp. 2d 651, 666 (E.D. Va. 2005), *vacated on other grounds*, 470 F.3d 162 (4th Cir. 2006). As discussed above, it is clear that Defendants employed "deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction" in their dealing with Plaintiff. Va. Code § 59.1-200(A)(14). Accordingly, I find that Defendants acted with knowing and intentional disregard for the protections offered to Plaintiff as a consumer by perpetrating a fraud upon her. Pursuant to the VCPA, I will treble Plaintiff's actual damages of $27,900.00, and will award her the sum of $83,700.00.

### C. Costs & Attorneys' Fees

Plaintiff is entitled to an award of attorneys' fees and costs. In actions under the CROA and the VCPA, the Court shall award prevailing plaintiffs reasonable attorneys' fees and costs of the action, in addition to any other damages. *See* 15 U.S.C. § 1679(g)(3) and *Stith v. Thorne*, 488 F. Supp. 2d 534, 542 (E.D. Va. 2007) (providing for awards of attorneys fees in CROA cases); Va. Code. § 59.1-206(C) and *Kelley v. Little Charlie's Auto Sales*, Civil Action No. 4:04-cv-00083, 2006 WL 2456355 at *2 (W.D. Va. Aug. 22, 2006) (providing for awards of attorneys fees in VCPA cases).

In the instant case, Plaintiff's costs consist of the $350.00 fee to file the complaint, and she will be awarded that amount. *See* Fed. R. Civ. P. 54(d)(1) ("[u]nless a federal statute, these rules, or a court order provides otherwise, costs -- other than attorney's fees -- should be allowed to the prevailing party"); *see also Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 766 (4th Cir.

2003) (the rule "creates a presumption that costs are to be awarded to the prevailing party").

With respect to attorneys' fees, Plaintiff's attorneys, the Legal Aid Justice Center in Charlottesville, Virginia, seek an award in the amount of $52,515.00.

The Supreme Court has ruled that each party to a lawsuit must ordinarily bear its own attorneys' fees unless there is express statutory authorization to the contrary. *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). When statutes expressly authorize awards of attorneys' fees, as is the case here, the Fourth Circuit has adopted the lodestar method of determining reasonable attorneys' fees. *Brodziak v. Runyon*, 145 F.3d 194, 196 (4th Cir.1998). The reasonable hourly rate for lodestar purposes is a "market rate," regardless of whether the employee's attorney works for a legal services corporation. *See Villalobos v. Vasquez-Campbell*, 1991 U.S. Dist. LEXIS 18841 at *21-*22 (W.D. Tex. Nov. 15, 1991) ("hourly rate should be determined in light of the customary fee for similar work in the community," and "[a] court should not decrease the attorneys' fee recovery, nor alter the method of calculating the amount of recovery when the plaintiffs are represented by a . . . legal aid office") (citing *Blum v. Stenson*, 465 U.S. 886, 893 (1984), and *Maldonado v. Lucca*, 636 F. Supp. 621, 628 (D.N.J. 1986)). In the Fourth Circuit, the lodestar figure is calculated by multiplying the number of reasonable hours expended by a reasonable rate, using the following factors[13] to determine the reasonable rate: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorneys' opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorneys' expectations at the outset of the litigation; (7) the time limitations imposed by the

---

[13] These factors are often referred to as the "*Johnson* factors" because the Fourth Circuit adopted them from *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974). *See Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th Cir. 1978).

client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases. *See Brodziak*, 145 F.3d at 196 (quoting *EEOC v. Service News Co.*, 898 F.2d 958, 965 (4th Cir.1990)).

Plaintiff's counsel has submitted affidavits and time records documenting that the requested fees are reasonable under the circumstances of this case.[14] Therefore, Plaintiff has submitted sufficient evidence to establish that, under the above-cited factors, she is entitled to an award of attorneys' fees. I pause to note that the attorneys' fees amount to 62% of the trebled damages, and 188% of the actual damages. However, given Defendants' default, the protracted status of the litigation, and the merits of Plaintiff's claims -- and considering that the fees are provided for by statute as an incentive, because if fees were not awarded in cases such as these, they typically would not be brought -- I find that the fees are reasonable.

Accordingly, Plaintiff is awarded $350.00 in costs, and attorneys' fees are awarded in the amount of $52,515.00.

### D. DECLARATORY RELIEF

Additionally, Plaintiff requests declaratory relief finding void and unenforceable her transactions related to the "Debt Free Program" operated by Defendants Nicholas McLeod and United Consultant Firm, LLC. Defendants worked to enact a fraudulent scheme whereby Plaintiff

---

[14] One of the attorneys claims compensation for 203.4 hours at $225.00 per hour, which is a reasonable and prevailing market rate for this attorney in Charlottesville, Virginia, and is a rate at which she has recently been compensated in this Court. The other attorney for whom compensation is sought is a more experienced attorney who has recently been compensated at $400.00 per hour in a class action in the United States District Court for the Middle District of Tennessee. He seeks $375.00 per hour for 18 hours of work.

was induced to sign title to her house over to Ms. Mosby-Moorman. Plaintiff was induced by Defendants' false promises that Plaintiff would be able to pay a year's worth of mortgage payments up front, repair her credit, and later refinance. Mosby-Moorman immediately mortgaged the property through WMC Mortgage Corporation, and Defendants shared in the profits resulting from the liquidation of Plaintiff's equity in her home. Defendants' fraudulent acts resulted in substantial damage to Plaintiff, including the loss of her home and a substantial loss of equity in her home. Accordingly, the requested declaratory relief will be granted, and Plaintiff's transactions and obligations related to the "Debt Free Program" operated by Defendants Nicholas McLeod and United Consultant Firm, LLC will be declared void and unenforceable.

### III. Conclusion

For the reasons set forth above, I will grant Plaintiff's motion for entry of default judgment and assessment of damages against Defendants Nicholas McLeod, United Consultant Firm, LLC, Philip J. George, and Certified Title and Escrow, Inc. An order will be entered awarding Plaintiff damages in the amount of $83,700.00 (actual damages of $27,900.00, trebled pursuant to the VCPA), $350.00 in costs, and $52,515.00 in attorneys' fees. Additionally, Plaintiff's transactions and obligations related to the "Debt Free Program" operated by Defendants Nicholas McLeod and United Consultant Firm, LLC will be declared void and unenforceable.

The Clerk of the Court is hereby directed to send a certified copy of this memorandum opinion and the accompanying order to all counsel of record.

Entered this 19th day of November, 2010.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE